MB1DFURC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FURNISHARE, INC.,

            Plaintiff,

        v.                        22 Civ 2245

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, ET AL,

            Defendants.                Conference
------------------------------x
                             New York, N.Y.
                             November 1, 2022
                             11:00 a.m.

Before:

                HON. PAUL A. ENGELMAYER,

                             District Judge

                     APPEARANCES

LATHAM & WATKINS
     Attorneys for Plaintiff
BY:  ROBERT J. GILBERT
     DAVID A. BARRETT

USERY & ASSOCIATES
     Attorney for Defendant Travelers
BY:  AMY CHRISTINE GROSS

SCAHILL LAW GROUP P.C.
     Attorney for Defendant State Farm
BY:  FRANCIS SCAHILL

MB1DFURC

| 1 | THE COURT:  Alright.  Good morning, everyone.  This is

2 | Judge Engelmayer calling the case of *Furnishare, Inc, v.*

3 | *Travelers Property Casualty Company of America, et al, 22 cv*

4 | *2245.*

5 | Who do I have for the plaintiff, which I'll refer to

6 | as Furnishare?

7 | MR. GILBERT:  Your Honor, you have Robert Gilbert and

8 | David Barrett of Latham & Watkins.

9 | THE COURT:  Very good.  Is that Mr. Gilbert speaking?

10 | MR. GILBERT:  Yes, your Honor.  I will be handling

11 | speaking roles today for plaintiff.

12 | THE COURT:  That was my next question.  Thank you.

13 | Who do I have for the defendants who I'll refer to as

14 | Travelers?

15 | MS. GROSS:  Hi.  This is Amy Gross from Usery &

16 | Associates, your Honor, for the two Travelers defendants.

17 | THE COURT:  Very good.  Good morning to you.

18 | And who do I have for State Farm?

19 | MR. SCAHILL:  Good morning, your Honor.  Frank Scahill

20 | for State Farm.

21 | THE COURT:  Do we have a court reporter on the line?

22 | COURT REPORTER:  Yes, your Honor.  Good morning.

23 | THE COURT:  Good morning.

24 | Alright.  So this is a premotion conference.  I want

25 | to begin by thanking counsel.  There's been an unusual amount

MB1DFURC

1    of productive activity in advance of the conference, which

2    makes it, on the one hand, easier for me to work through with

3    all of you a rational schedule for the upcoming briefing.  It

4    also alerts me to a handful of complexities.

5           Let me do this.  I just have a number of factual

6    questions for everybody first, and then we'll pivot to the

7    means by which a factual discovery process will develop.

8           I'll turn to you, Mr. Gilbert.  Can you summarize what

9    fact discovery consisted of in this case?

10          MR. GILBERT:  Fact discovery consisted largely of

11   interrogatories and production of documents.  There were no

12   depositions.  The plaintiff and defendants were able to reach

13   agreement on a joint stipulation of undisputed facts, which I

14   think captures every fact required to resolve the question.

15          THE COURT:  Let me go a little further.  The facts

16   relating to the incident in question are set out in the joint

17   stipulated facts, essentially paragraphs 1 through 5.  Is there

18   some sort of litigation going on about that incident or is this

19   insurance coverage action it?

20          Mr. Gilbert.

21          MR. GILBERT:  Today we believe the insurance coverage

22   is it.  We have not been alerted to any claims filed by

23   residents.  And I would say that's probably not surprising

24   given the location and a condominium or co-op building that

25   requires the residents to have property and casualty insurance.

MB1DFURC

1    The more likely way that this will develop is for a series of

2    subrogation actions, which may or may not involve litigation,

3    as opposed to the insurers of the owners of the -- or occupants

4    of the units contacting our insurer and saying, we pay these

5    claims but you're the responsible party, we expect you to

6    reimburse us.

7            THE COURT:  So, in other words, from my perspective,

8    unlike some insurance claims that arise out of personal injury

9    or property damage cases where there's essentially an

10   underlying often state court action sorting out the who done

11   whom wrong issue, and the issue for me becomes whether to rely

12   on the facts alleged in the complaint, whether to let the case

13   there marinate a bit so that the facts get developed.  In this

14   case, essentially there's nothing to defer to here.  There's no

15   other action.  It's really the facts that all of you have

16   stipulated to, which, from your perspective, I'll get to the

17   others in a moment, you're comfortable being the factual basis

18   to the extent the facts are drivers here of an insurance

19   coverage ruling?

20           MR. GILBERT:  Correct.

21           THE COURT:  Ms. Gross, same?

22           MS. GROSS:  Yes.  Thank you, your Honor.

23           THE COURT:  Mr. Scahill, same?

24           MR. SCAHILL:  Yes, Judge.  The only notice was a

25   notice letter that was sent to Furnishare, and it made its way

MB1DFURC

1    to State Farm.  And it's dated July 6 of 2022 from Chubb

2    Insurance Company for one of the tenants in the building

3    indicating that they are putting Furnishare on notice of a

4    particular subrogated claim from Chubb.

5           That's the only indication of any litigation, and that

6    has not been put into suit, that case by Chubb.

7           THE COURT:  Okay.  Very helpful.  I mean, it doesn't

8    sound as if the facts are any more complicated than anyone has

9    described here, but let me just -- I just want to make

10   absolutely sure before we move on that, to the extent you're

11   moving forward or opposing summary judgment, nobody expects to

12   bring to bear other facts involving the couch and the

13   sprinkler, if you will, than as set forth in the joint

14   stipulation.

15          Is that correct, Mr. Gilbert?

16          MR. GILBERT:  Yes.

17          THE COURT:  Same, Ms. Gross?

18          MS. GROSS:  Yes.

19          THE COURT:  Same, Mr. Scahill?

20          MR. SCAHILL:  Yes, Judge.

21          THE COURT:  Alright.  That's hugely helpful, and I

22   thank you for it.  And related, the next question is we're

23   still within the window that the case management plan supplied

24   for expert discovery.  This certainly does not seem to me to be

25   a case in which -- whether or not there's some other basis for

MB1DFURC

|    |                                                                        |
|----|------------------------------------------------------------------------|
| 1  | expert discovery, anything expert discovery could probably bear        |
| 2  | on the liability issues that are being proposed for                    |
| 3  | consideration and summary judgment.                                    |
| 4  | Let me just go around the horn to make sure that                       |
| 5  | everyone agrees that expert testimony is irrelevant to the             |
| 6  | liability issues here.                                                 |
| 7  | Mr. Gilbert?                                                           |
| 8  | MR. GILBERT:  Irrelevant.                                              |
| 9  | THE COURT:  Ms. Gross?                                                 |
| 10 | MS. GROSS:  Correct.  I don't think we need an expert                  |
| 11 | to determine who has the coverage obligation here.                     |
| 12 | THE COURT:  Mr. Scahill?                                               |
| 13 | MR. SCAHILL:  Agreed, your Honor.                                      |
| 14 | THE COURT:  Okay.  That also clarifies things.                         |
| 15 | So before we get to the briefing, there is the issue                   |
| 16 | of the joint statement of undisputed facts.  What you've given         |
| 17 | me is fine so far as it goes.  You sort of jumped the gun a            |
| 18 | little bit.  I don't mind it at all, but I didn't have an              |
| 19 | opportunity, as I usually do at this pre-motion conference, to         |
| 20 | tell you that I'd like to send you some models or go-by's that         |
| 21 | my clerks and I have found to be useful in other cases.  And,          |
| 22 | as a result, although I'm delighted you got out of the gate as         |
| 23 | quickly as you did, there's a little bit more that I would             |
| 24 | benefit from for joint stipulated facts.                               |
| 25 | In particular here are the policies, and the dates                     |

MB1DFURC

1    they were in effect, and the parties to them, and the JSF here

2    essentially is silent on that point.  I have no reason to doubt

3    there's going to be any dispute, but what I'm going to ask you

4    is after this call, I'll have my law clerk send you several

5    models or go-by's and I'll ask you to top up the JSF with facts

6    related to the policies that affect here.

7            I'm not asking for anything that really requires any

8    exercise of judgment, but I'm assuming you could stipulate all

9    to the existence of the policy, as to its authentication, to

10   the date that it was in effect, and to the parties, too.  And I

11   realize there are multiple policies here, but I'd like that to

12   be topped up, because that's part of the narrative of the case.

13   Invariably, it's going to be an early part of the facts as I

14   render them in any summary judgment decision, and I want to

15   make sure all of that is stipulated as well.

16           It should take you all together, combined several

17   hours just to top up the JSF and get everyone's sign off on it.

18           Mr. Gilbert, any problem with that?

19           MR. GILBERT:  Not at all, Your Honor.

20           THE COURT:  Ms. Gross?

21           MS. GROSS:  No, your Honor.  That seems fine.

22           THE COURT:  Mr. Scahill?

23           MR. SCAHILL:  Same, Judge, no issue.

24           THE COURT:  Alright.  I'm going to task Mr. Gilbert,

25   just for want of -- just because you're the first person on the

MB1DFURC

1    appearance sheet, with the duty of getting out of the gate on

2    that, but we will email you some go-by's.

3            Can I just ask that the JSF be topped up let us say by

4    Friday just with that information, Mr. Gilbert.

5            MR. GILBERT:  Sure.  We can do that.

6            And I guess my question would be, in addition to

7    topping up the JSF, will you want a separate statement of

8    undisputed facts here or will that suffice to satisfy that part

9    of Rule 56?

10           THE COURT:  The JSF does that trick.  Essentially, I'm

11   getting ahead of my usual narrative on this, but I have found,

12   and counsel have repeatedly told me that the more I insist that

13   parties stipulate to that, which is truly undisputed, the

14   easier it is for them to brief summary judgment, because they

15   can essentially draw on the JSF without having to submit 56.1

16   statements and oppositions.

17           And I would add that it's, of course, enormously

18   helpful to me, because I end up getting often a very large

19   majority of the facts stipulated to by counsel, and often

20   stipulated to in a sequential order that makes for a pretty

21   clear narrative and makes my lot easier.  So all I would

22   envision on top of the JSFs would be, and there may not be any

23   here, 56.1 statements from any movant as to facts that are

24   disputed, and 56.1 oppositions by any other party as to whether

25   or not they stipulate to or agree to that fact.

MB1DFURC

1          And the opponent is also, of course, at liberty to add

2     other material facts that they believe should be before the

3     Court given the nature of this case, where the dispute appears

4     to be in the application of law to fact, or the construction of

5     policies and not factual -- it's not clear to me that there

6     will be any 56.1 statements or oppositions, but in most cases

7     there are.  And where there are, and where there are, those are

8     essentially all the shorter, because the JSF has removed most

9     facts from the purview of 56.1 statements and oppositions.  But

10    to the extent there are disputed facts, you have to do the

11    usual thing, the 56.1 statements and the opposition.

12          Mr. Gilbert, that's a bit of a ramble, but does that

13    answer your question?

14          MR. GILBERT:  It does.

15          I'm trying to -- I think the only possible issue where

16    there would be a need for a 56.1 addendum, we'll call it, is

17    with respect to questions involving choice law and whether New

18    York or New Jersey applies, but I think the facts there are

19    already covered.

20          THE COURT:  I'm about to get to that, but putting

21    aside the legal issue, which is what I'm about to get to, are

22    there facts from your perspective, Mr. Gilbert, that you would

23    rely upon that are not in the joint statement of undisputed

24    facts?

25          MR. GILBERT:  Your Honor, I'm not aware of any other

MB1DFURC

1   than we might have a declaration from one of the officers just

2   describing in general why New York is the center of gravity of

3   this entity.  But we think the underlying facts, if not 100

4   percent, are 97 percent set forth in the joint stipulation.

5          THE COURT:  Okay.  Well, look, what I would say about

6   this is as follows.  To the extent there are facts on which you

7   intend to rely as to the choice of law issue, try to see

8   whether or not they can be stipulated to.  And obviously, if

9   they can't, perhaps because they're simply out of the realm of

10  knowledge of a different party, then you have no choice but to

11  put them forward in another manner.  But obviously, to the

12  extent you're able to get them stipulated to, they're fine.

13         Ms. Gross, are there facts relating to the choice of

14  law that -- facts, not legal arguments --

15         MS. GROSS:  Right.

16         THE COURT:  -- that are outside of the JSF so far?

17         MS. GROSS:  There may be, but not very many, and we

18  may be able to add those in.  I guess to the extent that there

19  are additional facts that Furnishare plans to put in with

20  respect to the center of gravity, I mean, I don't think they're

21  in there, but I also -- I don't know what that declaration

22  would say, but I, you know -- I've seen similar declarations,

23  so I don't want to -- expect it to be a massive document.

24         Just one question I have, and I'm happy to deal with

25  it with counsel offline.  I can't recall, and unfortunately my

MB1DFURC

1    system is down this morning, whether we quoted the relevant

2    policy language in the statement of undisputed facts.  And so

3    obviously that's something -- I don't think there's any dispute

4    as to what the policies say, but does that exact language

5    appear in the undisputed statement of facts, I don't believe --

6           THE COURT:  Ms. Gross, I'll answer the question.  I'll

7    answer the question.

8           MS. GROSS:  I apologize, your Honor.  Normally I would

9    have it open in front of me, but I can't get to it right now.

10           THE COURT:  Don't worry.  The JSF is so sparse it

11    doesn't cite any insurance policy, let alone quote a policy.

12           MS. GROSS:  Right.

13           THE COURT:  I don't think it's necessary you quote the

14    policy language, but I would certainly expect you attach the

15    policy as an exhibit and everyone stipulate to its

16    authenticity.

17           MS. GROSS:  Right.

18           THE COURT:  I'm happy for JSF also to direct my

19    attention to whatever provisions are going to be germane here,

20    but at the end of the day, as long as you authenticated the

21    document as the policy and attached it, everything in there is

22    in there by reference and there's no needed to, you know, add

23    or quote from it in the JSF as long as it's authenticated that

24    way.

25           Alright.  Let me ask you then, Mr. Scahill, just back

MB1DFURC

```
 1    to the issue of what law applies, are there facts on which you
 2    would rely that are not in the JSF as to what law applies?
 3              MR. SCAHILL:  No.  That would be a policy
 4    interpretation, Judge, a question of law.  There are no
 5    additional facts.
 6              THE COURT:  Alright.  So as to the issue of what law
 7    applies, it looks to me as if Furnishare is going to be saying
 8    New York law and Travelers is going to be saying New Jersey.
 9              Mr. Scahill, do you have a -- just a yes or no, do you
10    have a view as to which law applies?
11              MR. SCAHILL:  That would be a question for the Court,
12    your Honor.  However, the state law --
13              THE COURT:  I get that.  That's my job.  I'm asking
14    whether you want it or you are taking a position on that.
15              MR. SCAHILL:  Yes, as to which law applies, yes.
16              THE COURT:  Right, which -- what position will you
17    take?
18              MR. SCAHILL:  Well, the policy, the State Farm policy
19    calls for New Jersey choice of law.
20              THE COURT:  Alright.  Okay.  So let me ask this
21    question of Mr. Gilbert.  Just nose counting here.  You appear
22    to be taking a position that New York law applies, and your two
23    counsel for the other two parties here, without binding
24    anybody, appear to be of the view that New Jersey law applies.
25    Do you believe just offhand, Mr. Gilbert, that anything turns
```

MB1DFURC

 1   on the choice of law?

 2          MR. GILBERT:  We don't.  We would put it like this,

 3   your Honor.  New York law is crystal clear.  The *Elite*

 4   *Ambulance* case we think definitively resolves the question.

 5   New Jersey law doesn't have anything quite as on point

 6   involving something happening in a stairwell as something or

 7   someone is being moved down to the curb and then, you know,

 8   across the curb to the street to be loaded onto a vehicle.  But

 9   we don't think there's anything consistent in New Jersey law.

10          We would say that a policy issued with respect to

11   vehicles that are parked outside of New York is going to be

12   subject to different constraint -- different choice of law

13   principles, and at underwriting there will be a different

14   concern than a CJL policy and an umbrella policy that are

15   issues to apply broadly to the overall business operations,

16   which extended considerably beyond where the vehicle themselves

17   are garaged.

18          And our point here is that what was happening was not

19   anything involving the vehicle, and the considerations

20   involving the vehicle don't apply to operations inside the

21   building.  So --

22          THE COURT:  Okay.

23          MR. GILBERT:  -- in a nutshell, I think it's clear.

24          THE COURT:  I don't mean to get into the merits here.

25   I'm just trying to understand what, if anything, turns on the

MB1DFURC

1    choice of law.

2          Ms. Gross, what is your understanding?  What, if

3    anything, turns on the choice of law?

4          MS. GROSS:  So, in general, our view is under New York

5    or New Jersey law, the Travelers' policies don't respond.  So

6    in that sense, it may not make a difference, but to the extent

7    that there is something in New York law differing from New

8    Jersey law, and I know there are one or two cases, although I

9    think it's just a matter of how we interpret those cases -- in

10   our view, New Jersey law applies.

11         There are certainly aspects of the Travelers' policy

12   that indicate that there is risk secured in both New York and

13   New Jersey.  The address dealt with in the policy is in New

14   Jersey.  There, you know -- and it seems like there may be some

15   disputes on that.  I don't think the fact of what the policy

16   says or the facts that Furnishare is relying on, other than

17   what may be in the declaration that we haven't seen, I don't

18   think there's any dispute as to those facts.

19         THE COURT:  Okay.  Look, I've heard enough to -- let

20   me ask Mr. Scahill if you believe the choice of law makes a

21   difference.

22         MR. SCAHILL:  It does, Judge, and I know you don't

23   want to argue the case --

24         THE COURT:  I really don't, but --

25         MR. SCAHILL:  So the question for you would be whether

MB1DFURC

1    or not the State Farm policy provides coverage under New York

2    or New Jersey law, as an extremely broad definition of loading

3    and unloading.  But there are distinctions under New Jersey

4    law, so although the policy calls for the State Farm auto

5    policy, the truck policy which was issued in New Jersey calls

6    for a New Jersey choice of law.  Depending on what your

7    decision is here, the choice of law will impact your final

8    determination.

9           THE COURT:  Alright.  So, look, a couple of things

10   follow from this.  One is all the more important, if anybody's

11   got any facts that bear on the choice of law, try to get them

12   included in the joint stipulation of undisputed facts, in JSF.

13   If you're unable to, if, for example, certain facts are outside

14   of the can of the other side or they're unprepared to take the

15   party's word for it, then you'll need to put them forward to me

16   in the form of a 56.1 statement and presumably backed up by the

17   declaration of a knowledgeable person about your company's

18   operations, as the case may be.  But given that the case is

19   going to be limited, I would welcome its being made easier by

20   having such facts as can be stipulated to included in the JSA.

21          The second point is as follows.  Nobody should assume

22   they're going to win on the choice of law issue.  I would

23   expect that you will brief that early in your brief, and,

24   thereafter, in addressing the analysis as to liability,

25   alternatively address either scenario, so that in the event

MB1DFURC

1   that you are wrong as to the choice of law that is found to

2   apply, I'm not in a position of guessing what you would have

3   said.

4           So let me just ask everybody to please -- you're

5   welcome to caveat anything you say with the disclaimer that you

6   are now applying a choice of -- a body of law that you don't

7   think is applicable, but I want to hear from each side as to

8   each of the two contending choices of law.

9           Alright.  With that, it comes now, next just to

10  scheduling the briefing here, and I understand, putting aside

11  just for a moment State Farm and focusing just on Furnishare

12  and Travelers, I understand that both sides intend to move for

13  summary judgment.  Usually what I do in cases like that, rather

14  than having in effect six briefs, where each side has an

15  opening brief, each side has an opposition, and each side has a

16  reply, I usually will sequence things with four briefs, where

17  the opening party will move in support of summary judgment,

18  then the second party will submit a brief that is at once an

19  opening brief in support of its motion and an opposition to the

20  opening party's brief.  The third brief will be a reply in

21  support of the opening party's brief and an opposition to the

22  second party's brief.  And the fourth brief will be simply a

23  reply by the second party in support of its brief.  That saves

24  a tree or two and gets us down to four briefs.

25          Putting aside for a moment who goes first here, the

MB1DFURC

```
1    issue then becomes State Farm.  And, as I understand it, if the
2    basic gist of the debate here is that Furnishare believes that
3    this is not an auto policy issue and that, therefore,
4    Traveler's general liability policy applies, State Farm is,
5    generally speaking, in agreement with Furnishare here, right?
6            Mr. Scahill; is that correct?
7            MR. SCAHILL:  Yes, Judge.
8            THE COURT:  Mr. Scahill; is that correct?
9            MR. SCAHILL:  Yes, Judge.
10           THE COURT:  I know, as to that, for what it's worth,
11   that nonetheless it looks like your perspective on things may
12   be different in your mode of analysis than that of Furnishare.
13   Right off the bat, Furnishare appears to be taking the view
14   that New York law applies.  You have said that New Jersey law
15   applies, but you are coming out on the same bottom line.
16           Mr. Scahill, do I have that right?
17           MR. SCAHILL:  Judge, I want to be clear that the
18   policy calls for New Jersey choice of law, but your
19   determination as to the applicability of that policy may
20   indicate that the center of gravity test would require New York
21   law to be applied.
22           THE COURT:  I see.  You hadn't said that, so I should
23   have formulated my question to you differently earlier.  I'm
24   less interested in what the policy, the State Farm policy says,
25   and more interested in the issue of what state's law applies.
```

MB1DFURC

1    And maybe there are issues in the case as to which different

2    bodies of law apply, but I'm interested in your perspective,

3    Mr. Scahill, as to what law applies to this dispute as opposed

4    to one of the policies it's implicated under.

5            MR. SCAHILL:  If you do hold that New York is the

6    center of gravity and New York law should apply, and there are

7    considerable facts in this case which would call for that

8    opinion, if your Honor chooses, then it's pretty clear under

9    New York law that there's no coverage under the State Farm

10   policy.

11           If you decide that this should be decided under New

12   Jersey law, there's a greater analysis that has to be made

13   before you come to your conclusion.

14           THE COURT:  Alright.  That's helpful.  What it says to

15   me, though, is that, for the most part, Mr. Scahill, you are

16   going to be in sync with Furnishare's perspective than

17   Travelers', correct?

18           MR. SCAHILL:  That's correct, Judge.

19           THE COURT:  Alright.  So then comes the issue of how

20   to work State Farm into the briefing here.  Mr. Scahill, were

21   you planning on moving for summary judgment or merely finding

22   some context in which to set forth State Farm's views?

23           MR. SCAHILL:  So, Judge, your decision on Furnishare

24   -- Furnishare brought suit initially only against Travelers,

25   and then later State Farm came into the mix.  So your decision

MB1DFURC

1    based on which policy applies based on Furnishare's motion for

2    summary judgment and Travelers' cross motion for summary

3    judgment will ultimately decide the issue.  So if you agree

4    with Travelers, their policy doesn't apply, then it's State

5    Farm's primary.  If you agree that they're co-insurers, that's

6    another -- that's another determination that they both have to

7    provide coverage under the policies.

8           THE COURT:  Right.  No.  No.  I've got that.  The

9    issue is one conclusion that a person might draw from what you

10    just said, but I don't think it's -- what you're saying is

11    you're just going to stay mum and let me sort out the dispute

12    between Furnishare and Travelers and you'll just take it, and

13    if ultimately the outcome between Furnishare and Travelers

14    sticks State Farm with the coverage here, you'll just eat that.

15    Another possibility is that you want to be heard on that issue.

16           Are you going to want to be heard on that issue as I'm

17    resolving the motion by Furnishare or the cross motion by

18    Travelers, or vice versa?

19           MR. SCAHILL:  Yes, Judge.  We would ask for the

20    opportunity to submit our own motion with --

21           THE COURT:  Sorry.  That's what I was asking you.  I

22    asked you --

23           MR. SCAHILL:  Yes.

24           THE COURT:  -- whether you filed -- intended to file a

25    motion, and you just told me that the resolution of the other

MB1DFURC

1    parties' motions would carry the day.

2              Is it your intention to move for summary judgment --

3              MR. SCAHILL:  Yes.  Yes, Judge, we would.

4              THE COURT:  You have to stop interrupting.

5              MR. SCAHILL:  I'm sorry.

6              THE COURT:  We have a court reporter.  One person

7    speaks at a time.

8              Is it your intention to file our own free-standing

9    motion for summary judgment or is it sufficient for you to

10   simply file a brief at some point in the sequence that makes

11   your views known?

12             MR. SCAHILL:  We would file our own motion, Judge.

13             THE COURT:  Alright.  Then given that, it seems to me

14   that it makes sense for me to put State Farm on the same

15   schedule as Furnishare here.  And what I think makes the most

16   sense then is for Furnishare and State Farm to file, in the

17   sequence that I just described, briefs one and three, and

18   Travelers to file briefs two and four.

19             Before I start talking about dates, and I'll of course

20   accommodate people's vacations and stuff, but before we get to

21   that, Mr. Gilbert, any reason not to proceed in that order?

22             MR. GILBERT:  That makes sense to me, Your Honor.

23             THE COURT:  Ms. Gross?

24             MS. GROSS:  Yes, your Honor, that makes sense.

25             THE COURT:  Okay.  And Mr. Scahill?

MB1DFURC

1          MR. SCAHILL:  Yes, Judge.

2          THE COURT:  Okay.  So, look, by Friday just get me the

3     augmented JSF.

4          And as to the schedule, I came here with a proposed

5     sequence, which would begin with Furnishare and State Farm

6     submitting their opening briefs three weeks from today,

7     November the 22nd, with Travelers submitting its opposition to

8     those briefs and its own opening motion on December 16.  I'll

9     tuck in an extra week given the holidays and have Furnishare

10    and State Farm submitting their reply in support of their

11    opening motions and their opposition to the Travelers' motion

12    on January the 13th.  And then I would have Travelers' reply in

13    support of its motion two weeks later on January 27th.

14         Let me just go in sequence.  Beginning with you,

15    Mr. Gilbert, does that make sense to you?

16         MR. GILBERT:  Your Honor, I apologize.  I missed the

17    date for the opening brief to be submitted.

18         THE COURT:  Three weeks from today, November 22.

19         MR. GILBERT:  Your Honor, that's fine.  That works for

20    us.

21         THE COURT:  Mr. Scahill, does that date work for you?

22         MR. SCAHILL:  Yes, Judge.

23         THE COURT:  Alright.  Then Travelers' brief would be

24    due December 16.

25         Does that work for you, Ms. Gross?

MB1DFURC

1          MS. GROSS:  Yes, your Honor.

2          THE COURT:  Alright.  And that's a little more than

3     three weeks later.  And then -- it's about three weeks and

4     three days I think, and that takes into account Thanksgiving.

5     Furnishare, then you would have until January the 13th, so four

6     weeks, first of all, for your combined reply and opposition.

7          Does that work for you, Mr. Gilbert?

8          MR. GILBERT:  Yes, your Honor.

9          THE COURT:  And for you, Mr. Scahill?

10          MR. SCAHILL:  Yes, Judge.

11          THE COURT:  And then, finally, Travelers' reply in

12     support of its opening brief would be due January 27.

13          Does that work for you, Mr. Scahill?

14          MS. GROSS:  Yes, your Honor.

15          THE COURT:  Sorry.  Ms. Gross.  My bad.

16          MS. GROSS:  Yes, your Honor.

17          THE COURT:  Okay.  Then I'll issue an order that sets

18     out those dates and the JSF date.  I'm going to reserve for now

19     on whether to have argument.  It's entirely possible I will.  I

20     can see here that I have thoughtful, engaged counsel, and it's

21     the sort of case I likely would benefit having argument on.

22     I'm going to wait until the briefs begin to roll in to make an

23     assessment, but I think the odds are a little more likely than

24     not that I will have argument here.

25          Let me just go around the horn to see if there's

MB1DFURC

1    anything else I can productively address while I have you on

2    the phone.

3              Mr. Gilbert?

4              MR. GILBERT:  Your Honor, one point almost too minor

5    to mention, but my experience doing only insurance litigation

6    is policies can get a little awkward to work with unless

7    they're Bates numbered from page 1 of the first policy to the

8    last page of the last policy.  Would that be beneficial to you

9    in this case?

10             THE COURT:  Anything that promotes clarity is

11   beneficial.  That sounds good to me.  Why don't you work

12   collegially together as you're adding the policies to the JSF

13   with an eye, as you nicely suggest, to my functionality, which

14   is to say, you know, if there's a unique Bates page for each

15   policy page, that can only help.

16             Thank you.

17             MR. GILBERT:  Great.

18             THE COURT:  Ms. Gross, anything further for me to take

19   up?

20             MS. GROSS:  No, your Honor.  Thank you.

21             THE COURT:  And Mr. Scahill?

22             MR. SCAHILL:  Just one question, Judge, on your

23   procedures for judicial notice.  Obviously if there's a New

24   York or a New Jersey case, we'll cite to the case and include

25   it if necessary, but the underlying policies that were involved

MB1DFURC

1   in those cases are available on the New York electronic

2   website.  Would you take judicial notice of not only the

3   decision of the Court but everything that was submitted to form

4   that decision?

5           THE COURT:  Let me see if I have that right.  The

6   issue is going to be to the extent that counsel are citing

7   reported cases, one issue in terms of whether a case is

8   distinguishable or not or, if so, on what basis, is going to be

9   the underlying policy language.  Usually the decisive language

10  is quoted in relevant full in the decision.  Your question to

11  me assumes that it has not been and that there's a need to

12  excavate, if you will, the policy at issue.

13          That's your scenario, right, Mr. Scahill?

14          MR. SCAHILL:  Yes, Judge.

15          THE COURT:  And the issue is how to bring that to my

16  attention if it's not accessible on Westlaw or Lexis?

17          MR. SCAHILL:  Correct.  It would be available on the

18  New York electronic website.  It's NYSCEF, the acronym.

19          THE COURT:  Let me ask you, is this a hypothetical or

20  is there a case you have in mind at this point where you think

21  the underlying policy would be of assistance to the Court but

22  it's not quoted in the reported decision?

23          MR. SCAHILL:  There is a case, Judge.  It's called

24  *Tishman v. Zurich*.  It was decided by the appellate division

25  first on April 28 of this year.  And, as you indicated, some of

MB1DFURC

1    the policy is quoted in the decision, but it also is included

2    in a -- as an exhibit in the summary judgment motion.  And the

3    question there is the scope of completed operations.  I don't

4    need to get into all the facts of the case, but I just wanted

5    to know what -- if you had a custom and practice as far as the

6    documents that were used in the underlying cases that we're

7    citing.

8              THE COURT:  Thanks.  It's a thoughtful question.

9              The one thing I don't want to have is deep into the

10   briefing here a dispute among you arise about how to read an

11   underlying case because there's a dispute as to what the

12   underlying policy said.  You've already spotted a case that

13   apparently matters to you.  I would ask counsel then to -- why

14   don't you put it on the table as you're talking about the JSF.

15             Remember, when you're stipulating to facts, you're not

16   stipulating to their materiality.  As long as one party thinks

17   a fact is useful to him or her, that's a good reason if it's

18   undisputed to be in the JSF.

19             So your adversary relevant here, Ms. Gross, you know,

20   if Mr. Scahill persuades you that an underlying policy was the

21   one that's cited in an authority that he relies on, I'd ask you

22   as an officer of the court to stipulate that that was the

23   policy.  In no way, shape or form are you admitting that it is

24   controlling, relevant at all here, but you're saving everybody

25   agro by removing from ambiguity what the underlying policy is.

MB1DFURC

1          So I would ask all of you to be thoughtful in the way

2    Mr. Scahill has in trying to spot issues like that, and to the

3    extent you can do that before the JSF is complete, put the

4    policy from the other case in the JSF.  At the end of the day,

5    if something pops up later on in the course of the briefing

6    that nobody anticipated and there's a need to do this, I would

7    urge you to show your work, essentially make clear in your

8    brief where it is that you got that case from, and I would urge

9    you as a matter of collegiality and courtesy to the Court,

10   before filing the brief, reach out to your other two

11   adversaries to see if anyone disagrees that the policy you

12   intend to cite as having been the subject of an earlier

13   reported case is, in fact, the one you had in mind.  What I'm

14   trying to do is avoid any needless brush fires over something

15   like that.

16          Okay, Mr. Scahill?  Does that answer the question?

17          MR. SCAHILL:  Yes, Judge.  Thank you.

18          THE COURT:  With that, I have nothing further from

19   you.  I will issue an order today that sets out the deadlines,

20   and my law clerk will send you the model JSFs.

21          Again, an important point, though, in including

22   something in the JSF, you're not in any way, shape or form

23   conceding that it is germane at all.  You're merely conceding

24   that the fact is true.  So I hope people will approach the JSF

25   in a generous spirit.  In the ideal world, it becomes sort of a

MB1DFURC

```
 1   one-stop shop for any fact that any party intends to rely upon.
 2               With that, I wish you well and I thank you for really
 3   helpful pre-motion letters.  It's unusual for me to get a draft
 4   JSF before the conference, so I'm glad you did.  And in sending
 5   you back to top it off, I'm merely just trying to make it as
 6   complete as it can be.
 7               I wish you well.  Stay well, everybody, and I will
 8   look forward to seeing your briefs.
 9               MS. GROSS:  Thank you, your Honor.
10               MR. SCAHILL:  Thank you, your Honor.
11               MR. GILBERT:  Thank you, your Honor.
12               (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25
```